Wendell BILLS, Michael Doyle, Bobby Howard, Hastie Eugene Love, George Scanlow, Billy Ray Smith, Wayne Teasley, Jerry Ward, Donald Wheeler, Jr., James Wingard

v.

Murray HENDERSON, Commissioner of Corrections, Stonney Lane, Warden, Brushy Mountain Penitentiary, and the Tennessee Department of Corrections.

Civ. No. 3–77–165.

United States District Court, E. D. Tennessee, N. D.

Feb. 24, 1978.

Carol S. Nickle, U. T. Legal Clinic Community Office, Knoxville, Tenn., for plaintiffs.

Patricia Cottrell, Nashville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action brought pursuant to 42 U.S.C. § 1983. Plaintiffs seek injunctive and declaratory relief as well as compensatory and punitive damages for alleged vio-

lation of their constitutional rights to due process in prison disciplinary proceedings. The named plaintiffs were, at all pertinent times, inmates at the Brushy Mountain State Penitentiary. At all relevant times, defendant Murray Henderson was Commissioner of the Tennessee Department of Correction and defendant Stonney Lane was Warden of Brushy Mountain.

In accordance with 28 U.S.C. § 636(b)(2), upon the agreement of the parties, the Court submitted this case to the United States Magistrate, sitting as a special master, for trial. Trial was held without a jury on September 20, 1977. The report of the Magistrate was filed on December 14, 1977. Before the Court presently are objections to the Magistrate's report filed by both sides.

## I. *Facts*

The relevant, undisputed facts are as follows. On January 25, 1977, eight of the plaintiffs: Wendell Bills, Bobby Howard, Hastie Love, George Scanlow, Billy Ray Smith, Charles Teasley, Jerry Ward and Donald Wheeler were confined in administrative segregation.[1] Plaintiffs requested that they be permitted to meet with the defendant, Warden Lane. The request was denied. Partially as a result of this request and partially as a result of information pertaining to some of the plaintiffs given to Warden Lane by an informant, Warden Lane directed that the plaintiffs be placed in segregated confinement in "D" block. On January 25, after being placed in segregated confinement, each named plaintiff received the following written notice:

1. Section 4.650 of the *Adult Service Policies and Procedures Manual of the Department of Corrections* ("the Guidelines"), which defines the conditions of administrative segregation, provides the following daily minimum requirements:

"1. *Mail Privileges*: Unrestricted as with general population.

2. *Commissary Privileges*: Items of, or packaged in, glass or mailable metal restricted. Other items may be restricted with approval of Assistant Commissioner.

3. *Daily Exercises*: Restricted to special area providing close security and possibly restricted by inclement weather.

"As authorized in Section 4-601-5 of the disciplinary procedures, the resident's institutional record indicates sufficient cause to believe that his presence in the general population would constitute a threat to the welfare of other residents and to the good of the institution."

Plaintiffs remained in segregated confinement until January 27, 1977, at which time the plaintiffs as a group were given a hearing by the disciplinary board. Warden Lane submitted to the board in writing his reasons for placing the plaintiffs in segregated confinement. The reasons given concerned an alleged conspiracy to take hostages and alleged defiant comments directed against the Warden. Warden Lane was not available for direct testimony nor for cross-examination. After the hearings, the disciplinary board found each plaintiff guilty, based upon Warden Lane's written testimony, and ordered that each plaintiff be placed in administrative segregation. This order was to be reviewed in thirty days. The disciplinary board did not give to any of the plaintiffs a written statement containing either the reasons for the board's action or the evidence upon which it relied.

On April 2, 1977, plaintiffs Howard, Scanlow and Bills, all of whom were involved in the previous disciplinary proceeding, along with plaintiffs James Wingard and Michael Doyle, were placed in punitive segregation. On the same date, each of these plaintiffs was presented with a form whereby he was to indicate, *inter alia*, whether he requested the presence of the accusing official at his hearing. At least one plaintiff did so request.

4. *Showers and Shaves*: Security razors provided.

5. *Visitation*: May be restricted to a secure visiting room provided for segregated residents.

6. *Diet*: Unrestricted as with general population.

7. *Personal Property*: Unrestricted as with general population except for (2) above.

8. *Cells*: Standard cells with normal equipment provided including linens.

9. *Medical Care*: Unrestricted as with general population, except sick call will be conducted by Medical Technicians in cells.

10. *Library Privileges*:"

A disciplinary hearing was held on April 5, 1977.[2] The accusing guards were not present at the hearing. Plaintiffs did not attempt to introduce any other witnesses. No other oral evidence was presented. Each of the plaintiffs charged was found guilty by the disciplinary board and placed in punitive segregation[3] for a period of thirty days. The disciplinary board also recommended that each plaintiff be stripped of all accrued good and honor time. This recommendation was approved by Warden Lane on April 5, 1977, and by the Commissioner of Correction on April 14, 1977. The disciplinary board did not give to any of the plaintiffs charged a written statement containing either the reasons for the board's action, or the evidence upon which it relied. On April 27, 1977, the five plaintiffs were transferred from punitive segregation back to administrative segregation.

## II.  *Class Certification.*

■ Plaintiffs have sought certification of this suit as a class action. The proposed class is to consist of:

"all individuals incarcerated in correctional institutions under the control of the Tennessee Department of Corrections who are now, have been, or will be locked in segregated confinement by procedures which violate the Department's rules and regulations as set forth in Section 4.600 *et seq.* of the *Manual of Adult Service Policies and Procedures for the Department of Corrections.*" ("the Guidelines").

By far the largest part of the proposed class, those who "will be" subject to segregation, may lack standing to sue in their own right. Each individual seeking to sue as a member of this subclass will have to show sufficient likelihood of injury to demonstrate a personal stake in the outcome of the suit. *See Laird v. Tatum,* 408 U.S. 1, 13, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). On the other hand, the standing of the representative plaintiffs to maintain this action is clear since they have suffered serious consequences as a result of allegedly unconstitutional actions. Because of this difference in the standing to sue, the representative plaintiffs need not prove all the necessary elements of this subclass' claim in proving their own claim. Accordingly, the claim of the representative plaintiffs is not "typical" of this part of the proposed class. *See Amswiss International Corp. v. Heublin, Inc.,* 69 F.R.D. 663, 667 (N.D.Ga.1975).

Insofar as the remainder of the proposed class is concerned, plaintiffs have failed to show that those who are or have been segregated by procedures violative of department regulations constitute a class "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a). The Court also notes that because of the many procedural rights set forth in the Guidelines, the claims of the named plaintiffs in all likelihood would prove to be "typical" of only a small part of those claims which might be raised by inmates who are or have been subject to disciplinary proceedings. Accordingly, the Court denies plaintiffs' request for class certification.

## III.  *Liability of Defendants Henderson and Lane*

■ The Magistrate concluded that defendant Henderson should not remain as a defendant, but that a basis for liability had been stated against defendant Lane. The Court is of the opinion that the Magistrate's conclusion is correct.

---

**2.** The parties agree that notice of this hearing was adequate.

**3.** Section 4.700 of the Guidelines, which defines the conditions of punitive segregation, provides the following daily minimum requirements:

1. *Mail Privileges*: Courts, attorneys (Legal Aid Society) and immediate family.
2. *Visitation*: Attorney (Legal Aid Society).
3. *Diet*: Unrestricted as with general population.
4. *Cells*: Standard cells with normal equipment, including linens.
5. *Medical Care*: Unrestricted as with general population except sick call will be conducted in cells by Medical Technician.
6. *Personal Property*: Paper and pen or pencil; personal Bible, Koran or other religious text (1), and legal materials.
7. *Shower and Shave*: At least weekly.

This is not a suit in which an attempt is made to hold a supervisor merely because he failed to prevent actions acknowledged to be constitutional violations. *Cf. Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Rather the allegation here is that the accepted policies of the institution, as applied by the disciplinary board, violated the Constitution. Under such a theory, it is proper to sue the official, here defendant Lane, who had authority over the daily administration of these institutional policies. In the prison setting, the warden has been repeatedly held as a proper party defendant without an affirmative showing that the warden had explicitly approved the procedures used in specific instances at issue. *See e.g., Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Walker v. Hughes*, 558 F.2d 1247 (6th Cir. 1977).

While this analysis applies in stating a potential claim against defendant Lane, defendant Henderson is responsible only for the Guidelines as adopted. His control over the day-to-day operations of the disciplinary board is too remote to attribute to him acquiescence in the Guidelines as applied by the board. In the light of the relief ultimately granted by the Court, the dismissal of defendant Henderson does not affect the outcome of this suit.

### IV. *Liberty Interest*

■ The Fourteenth Amendment prohibits a State from depriving a person of life, liberty or property without due process of law. Therefore, before the protections of the due process clause apply, plaintiffs must show that an interest, in this case a "liberty" interest, has been infringed by the State.

The plaintiffs argue that the State has infringed a liberty interest by: (1) withdrawing their accrued good and honor time; (2) confining them in punitive segregation; and (3) confining them in administrative segregation. The plaintiffs also assert that they have a liberty interest in the procedures mandated in the Guidelines, specifically the rights of confrontation and cross-examination, which were not provided to them at the April hearing.

### A. *Good and Honor Time*

■ The Supreme Court in *Wolff v. McDonnell, supra,* held that there was a liberty interest in the retention of good time credits under Nebraska law. The Court notes that Tennessee law also creates a clear "statutory right to good time." 418 U.S. at 557, 94 S.Ct. 2963. See Tenn.Code Ann. § 41–332[4] and § 41–335.[5] Under these provisions, accrued good time may be rescinded only upon a finding that the inmate has "demean[ed] himself improperly." Tenn.Code Ann. § 41–335. Thus, the Tennessee statutes do provide a basis for a liberty interest in retention of accrued good time. *See Meachum v. Fano, supra,* 427 U.S. at 228, 96 S.Ct. 2532.

■ The statute governing provision of honor time leaves the creation of the honor time system entirely to the discretion of the Commissioner of Correction. Tenn.Code Ann. § 41–334.[6] Therefore, inmates have no substantial interest in the creation of honor time. However, once an honor time

---

**4.** "Each convict who shall demean himself uprightly shall have deducted from the time for which he may have been sentenced, one (1) month for the first year, two (2) months for the second year, three (3) months for each subsequent year until the tenth year inclusive and four (4) months for each remaining year of the time of imprisonment. This shall apply to prisoners in confinement or on parole therefrom."

**5.** "Should any prisoner who has been placed in the honor grade violate the rules and regulations of the prison or otherwise demean himself improperly, the commissioner of correction is

authorized to remove him from the honor grade and take away the whole or any part of the honor time of said person. For the same consideration, the commissioner of correction is authorized to take away the whole or any part of the good time of said person."

**6.** "The . . . commissioner of correction shall have the right and power to establish an honor grade in which convicts shall be placed when received at the prison. The allowance for honor grade shall be two (2) months of each year of the term of service.

system has been created, accrued honor time may only be forfeited upon a finding that the inmate has "demean[ed] himself improperly." Tenn.Code Ann. § 41–335. Thus, the plaintiffs have an interest in the retention of good and honor time sufficient to trigger the application of the due process clause to the April hearing.

### B. *Punitive Segregation*

The April hearing not only resulted in loss of good and honor time, but also resulted in the imposition of punitive segregation. Although the transfer to punitive segregation constituted a "change in the conditions of confinement having a substantial adverse impact on the prisoner" *Meachum v. Fano, supra*, at 224, 96 S.Ct. at 2538, no liberty interest was involved unless state law creates an interest in not being placed in punitive segregation. *See Walker v. Hughes, supra*, at 1252.

■ Tennessee statutes do not restrict the general discretion of prison officials in governing the conditions of confinement of the prison population. The Commissioner of Correction, however, has limited substantially his discretion in imposing punitive segregation by promulgating the Guidelines. The Guidelines provide that:

"[t]he purpose of punitive segregation is to provide a place of temporary maximum custody for rule breakers in the institution. Normally, punitive segregation is effected when the infraction [of] rules is too serious to justify a mere reprimand." Guidelines, § 4.602.

Because substantive administrative guidelines may be the source of a narrow liberty interest, *see Walker v. Hughes, supra*, at 1256, the Court finds that the Guidelines create in the plaintiffs an interest in not being placed in punitive segregation except upon a finding that a rule of the institution has been violated. This narrow liberty interest provides a second basis for a finding

that due process protections should be applied to the April hearing.

### C. *Administrative Segregation*

■ At the January hearing, the only sanction imposed was that of administrative segregation. Unlike punitive segregation, the Guidelines do not designate administrative segregation as available only as punishment for violation of institutional rules. Section 4.602 of the Guidelines provides that:

"[t]he purpose of administrative segregation is to provide a place of maximum custody to protect an individual, others, and to promote and maintain order."

The action of prison officials in imposing administrative segregation need not be "conditioned upon the occurrence of specified events," *Meachum v. Fano, supra*, 427 U.S. at 226–227, 96 S.Ct. at 2539. The degree of discretion retained by the warden and the disciplinary board in imposing administrative segregation refutes plaintiffs' argument that the Guidelines have created a liberty interest in not being committed to administrative segregation. Under the Guidelines, administrative segregation need not be based upon any instance of major misconduct by the inmate, or indeed any misconduct at all. Accordingly, the Court holds that no liberty interest of the plaintiffs was involved in their transfer to administrative segregation as a result of the January hearing. For this reason, plaintiffs Hastie Love, Billy Ray Smith, Charles Teasley, Jerry Ward, and Donald Wheeler, who were subject to disciplinary procedures only at the January hearing, have failed to state a cause of action under Section 1983 and therefore their claims must be dismissed.[7]

### D. *Procedural Guarantees Under the Guidelines*

The remaining plaintiffs assert one final liberty interest. Plaintiffs contend that, at

---

7. Although the record shows that in January 1977, the same cellblock was used to house both those in administrative segregation and punitive segregation, there has been no showing that prison officials were simply labeling as administrative segregation what was in fact punitive segregation in order to avoid due process protections. *Cf. Taylor v. Clement*, 433 F.Supp. 585 (S.D.N.Y.1977).

the April hearing, they were denied the opportunity to confront and cross-examine the accusing guards. Plaintiffs point out that the rights of confrontation and cross-examination are specifically provided in the Guidelines. The liberty interest which plaintiffs assert is that of not being deprived of procedures mandated in the Guidelines.

■ General due process considerations do not require confrontation and cross-examination in the disciplinary hearing context. *See Baxter v. Palmigiano,* 425 U.S. 308, 320–323, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Therefore, unless the Guidelines themselves create an interest in these procedures, no federal issue is raised by their omission.

■ The Court is of the opinion that the purely procedural provisions of the Guidelines do not create a liberty interest in their use. Although the precise role played by procedural guarantees in the creation of liberty interests is ambiguous, it is apparent that clear procedural rules do not automatically create liberty interests in related substantive rules. Thus, for example, in *Meachum v. Fano, supra,* and *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the presence of procedural guarantees was insufficient to create a liberty interest in the substantive rights at issue. *See generally Lombardo v. Meachum,* 548 F.2d 13, 15–16 (1st Cir. 1977). It also appears that procedural guarantees do not create liberty interests in the procedures themselves, at least where no correlative substantive liberty interest is found. *See Lombardo v. Meachum, supra,* at 14, n. 4; *Four Certain Unnamed Inmates v. Hall,* 550 F.2d 1291 (1st Cir. 1977), *rev'g Four Unnamed Plaintiffs v. Hall,* 424 F.Supp. 357 (D.Mass.1976) (lower court held that procedural guarantees created a liberty interest sufficient to invoke due process). *But see McKinnon v. Patterson,* 425 F.Supp. 383 (S.D.N.Y.1976).

■ The Court feels that the holding of the First Circuit in *Lombardo, supra,* that procedural guarantees do not create a liber-

ty interest when no liberty interest is found in the correlative substantive rights, should logically be expanded to include the present context in which liberty interests in the correlative substantive rights do exist. As *Meachum v. Fano, supra* and *Bishop v. Wood, supra,* imply, substantive guarantees and procedural guarantees must be evaluated separately in determining whether either create a liberty interest. Thus, the mere fact that liberty interests in substantive rights have been found here, does not distinguish this case from the holding in *Lombardo v. Meachum, supra.*

■ The reason that substantive and procedural guarantees should, at least in this instance, be analyzed differently in considering whether liberty interests have been created thereby, lies in the distinction between procedural and substantive rights in the prison setting. Under the laws of the State of Tennessee, the Commissioner of Correction possesses absolute discretion in the promulgation of the Guidelines which plaintiffs argue serve as the basis of their liberty interests. The Sixth Circuit, in *Walker v. Hughes, supra,* recognized the anomaly of finding a liberty interest in substantive prison guidelines revocable at the discretion of the administration officer, but nevertheless, found that a liberty interest had been created in that case. 558 F.2d at 1255. The seeming precariousness of administratively created substantive rights is belied by the general context in which substantive rights are granted in the prison setting. Relatively few substantive rights are granted to inmates. A significant proportion of those substantive rights which are granted are expressly created by the legislature, thereby indicating the importance attributed by the State to substantive prison rights. *See e. g.,* Section IV, A, *supra.* Once created, substantive rights in the prison setting are rarely modified. For example, Tenn.Code Ann. § 41–332, which creates the right to good time, has remained relatively unchanged for over twenty-five years. In a context of such serious state concern, and such undisturbed continuity, a prison inmate has a "justifiable expectation" that he will receive the bene-

fits of all substantive rights, even though particular substantive rights are contained in guidelines subject to change at the will of prison officials. *Montayne v. Haynes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). *See Meachum v. Fano, supra,* 427 U.S. at 228, 96 S.Ct. 2532.

However, the context in which procedural guarantees are granted to inmates is radically different. Responsibility for the development of disciplinary procedures is normally left to the discretion of prison officials. The number and complexity of potential procedural rights is far greater than that of substantive rights. Furthermore, there exists substantial disagreement over the extent to which traditional procedural protections serve their purported purposes. *See generally* Mashaw, *The Management Side of Due Process: Some Theoretical and Litigation Notes on the Assurance of Accuracy, Fairness and Timeliness in the Adjudication of Social Welfare Claims,* 59 Corn.L. Rev. 772 (1974). In the prison setting it is to be expected that, in light of such doubts and such complexity, prison officials will be constantly experimenting with different procedures, and re-evaluating the proper balance to be struck between protection for the inmate and the needs of the institution. The Supreme Court has recognized that, beyond the minimum requirements of due process, there will be "continuing development" of disciplinary procedures which will require the "sound discretion of corrections officials" *Wolff v. McDonnell, supra,* 418 U.S. at 568, 94 S.Ct. 2963. Beyond the minimum requirements of due process, prisoners do not possess any assurance that this experimentation and development will freeze at one point, and that particular procedures promulgated through an act of discretion and revocable at will, will continue to be available to them. In contrast to substantive rights, prisoners should therefore expect that administrative discretion to change disciplinary procedures inevitably will be exercised. Any expectation to the contrary is simply not a "justifiable expectation." *Montayme v. Haynes, supra,* 427 U.S. at 243, 96 S.Ct. 2543. *See also Meachum v. Fano, supra,* 427 U.S. at 228, 96

S.Ct. 2532. Thus, in the prison context, no liberty interest exists in procedural guarantees which are created and can be destroyed at the discretion of a single official. This is particularly so in the case of the rights to confrontation and cross-examination which, the Supreme Court has noted, are subject to "diverse and somewhat experimental" practices. *Wolff v. McDonnell, supra,* 418 U.S. at 569, 94 S.Ct. 2963.

The conclusion that liberty interests are not usually created by prison procedural guidelines is strongly reinforced by the suggestion in *Walker v. Hughes, supra,* that once a liberty interest is found in an administrative guideline, prison officials may lose their absolute discretion to alter it, though presumably a guideline could still be changed by statute or other formal process. Id. at 1255. Such a result might not burden the State unreasonably in the context of substantive rights because of the relative infrequency of the need for modification of such rights and the willingness and capacity of the legislature to act in the area of substantive rights. However, were the Commissioner to lose discretion in the promulgation of complex disciplinary procedures, it is unlikely that the necessary, delicate, and changing balance of procedures used in disciplinary proceedings could be adequately maintained.

■ The Court expresses no opinion as to the status of procedural rights created by statute or other formal process. The Court also notes that due process protections remain firmly implanted in this case because of the substantive rights found above. No prisoner may be deprived of good and honor time, nor may punitive segregation be imposed, without utilization of constitutionally mandated procedures.

### V. *Due Process*

Having found that the plaintiffs were entitled to the protections of the due process clause in the April hearing, the Court must address the question of what process was due. As previously decided, the due process clause does not require confronta-

tion and cross-examination in the context of prison disciplinary hearings. *See Baxter v. Palmigiano, supra,* 425 U.S. at 320–23, 96 S.Ct. 1551. The notice provided for the April hearing and the consequent administrative review are not challenged here.

■ The Magistrate concluded that the defendant violated the plaintiffs' right to due process by failing to provide to the plaintiffs a limited written record of the April hearing. The Court agrees with this conclusion. The Supreme Court stated in *Wolff v. McDonnell, supra* :

> "There is no indication that the inmate is ever given a written statement by the Committee as to the evidence or informed in writing or otherwise as to the reasons for the disciplinary action taken . . . .
> We also hold that there must be a 'written statement by the factfinders as to the evidence relied on and the reasons' for the disciplinary action. *Morrissey [v. Brewer],* 408 U.S. [471], at 489 [92 S.Ct. 2593, at 2604, 33 L.Ed.2d 484]." 418 U.S. at 564–565, 94 S.Ct. at 2978–2979.

The due process right to a written statement of the evidence and reasons for the action taken has since been reaffirmed. *Baxter v. Palmigiano, supra,* 425 U.S. at 322–23 n. 5, 96 S.Ct. 1551.

■ The defendant argues that the requirement of a limited written record has been met in this case. It appears that the disciplinary board compiled a written record which in fact surpassed the requirements of *Wolff.* The defendant argues that the requirement of a limited record is met when such a record is compiled, though never made available to the affected inmate directly. This defense is untenable. The written record cannot satisfy due process requirements unless it is certain that the inmate has complete and full access to it. Such access is assured only if the record is in fact furnished to him.[8]

■ Although a limited written record must be provided to the inmate, the requirements of the Guidelines concerning this written record are more exacting than are the requirements of due process.[9] For example, it is not constitutionally required that such a statement contain the names of all witnesses, especially when the security of the institution mandates otherwise. The disciplinary board may, if it wishes, prepare separate written records: one for the inmate, and one for purposes of Section 4.601(4)(f).

## VI. *Relief*

The Magistrate entered declaratory judgment for all plaintiffs against the defendant on the basis of the defendant's denial of plaintiffs' rights to a limited record from the disciplinary board. The Court affirms the judgment of the Magistrate but modifies it to reflect that judgment will be entered against the defendant only on behalf of those plaintiffs not previously dismissed by the Court. Liability is based only upon the failure to provide a limited written record to the plaintiffs after the April hearing.

■ The Magistrate denied punitive damages on the ground that there had been no showing that defendant Lane had intentionally sought to violate either the Guidelines or the constitutional rights of the plaintiffs. The Court accepts this finding. The failure to provide a limited written record under these circumstances could not justify the imposition of punitive damages.

■ Finally, the Magistrate ordered that all good and honor time lost as a result

---

**8.** Defendant Lane argues in his brief that the limited written record is available to an inmate's resident advisor upon request. Without deciding whether an inmate may be required affirmatively, after clear notice, to request the limited written record, certainly the inmate himself would have to have the right of such request.

**9.** Section 4.601(4)(f) provides as follows:

"The Board shall state in writing (a) evidence relied upon including the names of the witnesses; (b) the Board's findings of fact, which may or may not be the same as the reporting employee written complaints; (c) in cases involving indefinite administrative segregation or forfeiture of Good and Honor Time, the reasons supporting the sentencing decision must be given. Specifics must always be given. A mere finding of guilty is not sufficient."

of the April hearing be restored to the plaintiffs. The Court concludes that, while determination of the constitutional validity of procedures used to revoke good and honor time may be made in a suit brought under 42 U.S.C. § 1983, the actual restoration of such time in an action brought under Section 1983 is foreclosed by *Preiser v. Rodriquez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). *See Wolff v. McDonnell, supra,* 418 U.S. at 553–555, 94 S.Ct. 2963. The parties have raised no further objection to the adequacy of the relief granted by the Magistrate.

Except as herein indicated, the report of the Magistrate is accepted.

For the foregoing reasons, it is ORDERED that the defendant Henderson be, and he hereby is, dismissed as a party to this action; that the claims of plaintiffs Hastie Love, Billy Ray Smith, Charles Teasley, Jerry Ward and Donald Wheeler be, and the same hereby are, dismissed; that plaintiffs' motion for class certification be, and the same hereby is, denied; that the Magistrate's order reinstating good and honor time under 42 U.S.C. § 1983 be, and the same hereby is, set aside. Defendant Lane erred in failing to provide to plaintiffs Bobby Howard, George Scanlow, Wendell Bills, James Wingard and Michael Doyle a limited written record of disciplinary proceedings wherein punitive segregation and loss of good and honor time were imposed.