United States Court of Appeals
 For the First Circuit
 

No. 96-1409

 JUAN A. DAVILA-LOPES,

 Plaintiff, Appellant,

 v.

 JOSE SOLER ZAPATA, ET AL.,

 Defendants, Appellees.
 

 ERRATA SHEET ERRATA SHEET

 The opinion of this Court issued on April 17, 1997, is
corrected as follows:

 Page 2, second paragraph, line 5, change "appellants" to
"appellees."

 United States Court of Appeals
 For the First Circuit
 

No. 96-1409

 JUAN A. DAVILA-LOPES,

 Plaintiff, Appellant,

 v.

 JOSE SOLER ZAPATA, ET AL.,

 Defendants, Appellees.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Hector M. Laffitte, U.S. District Judge] 

 

 Before

 Selya, Circuit Judge, 
 Coffin, Senior Circuit Judge, 
 and Stahl, Circuit Judge. 
 

 Guillermo Ramos Luina for appellant. 
 Sigfredo Rodriguez-Isaac, Assistant Solicitor General, Department 
of Justice, with whom Carlos Lugo Fiol, Solicitor General, and Edda 
Serrano Blasini, Assistant Solicitor General, were on brief for the 
Commonwealth of Puerto Rico.
 Eli B. Arroyo for appellees Ausberto Alejandro Benitez, Jose M. 
Dalmasy Montalvo and Edgar Belmonte.

 

 April 17, 1997
 

 COFFIN, Senior Circuit Judge. This is an appeal by a 

physician from a judgment dismissing his 1983 complaint against

officials of a Puerto Rico regional hospital who rejected his

initial application for limited courtesy privileges without

explanation or hearing, in violation of hospital by-laws. It

raises the interesting question whether the hospital's detailed

set of procedural regulations created a property interest

entitling appellant to procedural due process. We conclude that

they did not.

 Appellant, a licensed physician, has invoked 42 U.S.C. 

1983, claiming that his constitutional right to procedural due

process was violated by defendants, who are various officials

responsible for the operation of the Guayama Area Hospital (the

"Hospital").1 While some of the appellees argued below that no

state action was involved, the argument was only very cursorily

pursued on appeal, without citation to authorities. Since the

Hospital is financed by the Commonwealth, its by-laws were

approved by the Secretary of Health, and its "Governing Body" or

final decider is the Secretary or his Regional Director, we, like

the district court, shall assume that the 1983 prerequisite of

state action is satisfied. Appellant seeks a declaratory
  

 1 There are two groups of defendants-appellees. One
consists of the present and former Secretary of the Department of
Health of the Commonwealth, Regional Director of the Department
for the Southern Region, and Chief Executive Director of the
Guayama Area Hospital. The second consists of the three hospital
officials, Dr. Alejandro and two other doctors, who constituted
the Executive Committee which initiated the action complained of. 
Our reference to "the Hospital" will embrace the interests of
all.

 -3-

judgment, compensatory and punitive damages, and an injunction

giving him his requested hospital privileges.2

 Factual Background 

 The factual setting is the following. In 1986 appellant

joined the Hospital's regular staff in the Department of Internal

Medicine. In 1987, after some history of difficulties, he was

dismissed from the Medical Faculty of the University charged with

operating the Hospital, and all his privileges were terminated.

Appellant thereupon brought suit in a Commonwealth Superior

Court. That court rendered a judgment on June 7, 1990 that the

Hospital acted on ample grounds, citing some seven reasons

proffered by the Hospital, ranging from appellant not making

rounds when on call, to being tardy or not attending outpatient

clinics, and seeking out intensive care patients who were

insured. 

 Less than ten months later, on April 29, 1991, appellant

applied anew for Hospital privileges. Not having a contract with

the University, he was eligible for only Courtesy Privileges,

which were reserved for physicians who would not admit more than

  

 2 Appellant mentions in his brief a pendent state claim
which he asserts was improperly and inadvertently included in the
dismissal of the complaint. He asks us, in the event of an
affirmance, to clarify the record to show that the dismissal of
the state claim was for lack of jurisdiction. We see nothing in
the complaint that rises to the dignity of a state claim. 
Although at one point it invokes 28 U.S.C. 1367 (concerning
supplemental jurisdiction), the only reference to state law is
found in the prayer for relief from, inter alia, violation "of 
the applicable laws of the Commonwealth of Puerto Rico and
regulations." This falls far short of identifying any pendent
state claim. 

 -4-

fifteen patients for hospital care per year. Thereafter,

appellant faced a period of apparent stonewalling by the

hospital, as he made repeated inquiries as to the status of his

request. Eventually, on November 11, 1991, his request for

privileges was denied by the Regional Director and he sought

review. A hearing of sorts was held on January 17, 1992, at

which appellant was unable to obtain a statement of reasons for

the rejection of his request. Shortly thereafter, appellant was

notified that the decision to reject his application for

privileges had been ratified. On October 23, 1992, appellant

filed his complaint in the present case.

 The By-Laws of the Hospital are comprehensive and

procedurally detailed. There are five categories of staff, of

which the Courtesy Staff is one, along with Consulting, Active,

Associate, and Special Associate Staff. (Art. III, Sec. 2)

Appointment of the Courtesy Staff is "through regular Medical

Staff channels." (Art. VIII, Sec. 5) After an applicant

furnishes some fifteen different documents (Art. III, Sec. 3) and

various releases and authorizations (Art. III, Sec. 4),

subsequent steps include a written report by the Department

Chief, deliberation and recommendation by the Executive

Committee, and, in the event of an adverse recommendation, a

hearing before a specially convened hearing committee. 

 Prior to any hearing, a notice to the practitioner "shall

contain a concise statement of the practitioner's alleged acts or

omissions, including [patient records] or the other reasons or

 -5-

subject matter forming the basis for the adverse recommendation."

Provisions governing hearings cover the composition of the panel,

the duties of the moderator, allowance for representation, the

examining and cross examining of witnesses, the introduction of

exhibits, the making of a record, and the filing of written

memoranda. In hearings on most issues, the By-Laws place the

burden on the institutional body to show that the adverse

recommendation was not "arbitrary, irrational or capricious."

But in hearings involving a "Denial of initial appointment to

staff status" (Item 1, Article IV, page 16 of By-Laws) or a

"Denial of requested clinical privileges" (Item 7, Article IV,

page 17 of By-Laws), the By-Laws provide that

 it will be the practitioner who shall thereafter be
 responsible for supporting by evidence his challenge to
 the recommendation or action and shall prevail only if
 he establishes by clear and convincing evidence that
 the recommendation or action was arbitrary, irrational
 or capricious. (Page 26 of By-Laws)

Moreover, in hearings relating to these same items,

 the evidence presented by the . . . Executive Committee
 in support of its initial determination . . . may
 relate to . . . negative judgments of such body
 regarding information contained in the practitioner's
 application or request, and related references and
 documentation to the effect that such materials, for
 reasons explained by such body, fail to establish an
 acceptable basis for granting the application or
 request. Id. 

 Analysis  

 It is clear that the process given to appellant did not

follow the steps set forth in the By-Laws. The appellees, like

the district court, relied for the notice requirement of due

process on the appellant's knowledge of the 1987 charges of

 -6-

misconduct, as contained in the "Findings of Fact" of the

Commonwealth Superior Court. This would seem to be a shaky

foundation in light of the passage of time, although we note the

entire absence of any indication given by appellant that changes

in his conduct could be expected.

 The critical and threshold question is whether appellant's

interest in being given courtesy privileges is "grounded in

substantive legal relationships defined by . . . specific state

or federal rules of law."3 As the Supreme Court explained in

Board of Regents v. Roth, 408 U.S. 564, 577 (1972), to have a 

constitutionally protected interest, one must have "more than an

abstract need," one must have "a legitimate claim of

entitlement," "defined by an existing rule or understanding that

stems from an independent source such as state law . . . ." For

example, where rules so defined welfare eligibility that an

applicant had a right to a hearing to attempt to demonstrate that

he was within the statutory definition, this met the above

requirements. See Goldberg v. Kelly, 397 U.S. 254, 268 (1970); 

see also Bishop v. Wood, 426 U.S. 341 (1976); Meachum v. Fano, 

427 U.S. 215, (1976).

 Our own opinion in Lowe v. Scott, 959 F.2d 323, 338 (1st 

Cir. 1992), is relied upon by appellant for the proposition that

requirements of adequate process in decisions "affecting"

hospital privileges can create a property interest. Appellant

  

 3 Laurence H. Tribe, American Constitutional Law 677 (2d
ed. 1988).

 -7-

overreaches. In that case plaintiff was protesting the

suspension of a staff privilege to supervise nurse midwives. See 

id. at 325. When we stated that "[A] state may create the 

property interest in privileges directly by imposing the

requirement . . . that all hospitals provide physicians adequate

process in decisions affecting privileges," we were speaking in

the context, made clear by the preceding sentence, of an action

taking away something that had been enjoyed -- i.e. that a public

hospital could create a property interest by "regulations

guaranteeing that these privileges will not be revoked without 

cause or a hearing." Id. at 338 (emphasis supplied). This 

meaning was reaffirmed when we subsequently referred to the kind

of state law that would be applicable to all hospitals, i.e., a

statute or court decision "requiring that the revocation of 

hospital privileges comport with due process." Id. (emphasis 

supplied).4

 Appellant does not assert that any preexisting status or

privilege was taken from him. Rather, his claim to a property

interest is based on the detailed procedural rules of the By-Laws

of the Hospital, together with what he asserts is such a

  

 4 Similarly, appellant has sought to overextend Hernandez 
v. Asociacion Hosp. del Maestro, 106 P.R. Offic. Trans. 96 
(1977). Appellant cites it for the proposition that actions by
hospitals that "affect" staff privileges must comply with due
process. But that case involved hospital action in canceling
membership on a hospital's medical staff and summarily suspending
all privileges. See id. at 101. The Puerto Rico Supreme Court 
detailed the procedures which were triggered by a suspension or
revocation and concerned itself solely with ascertaining whether
they had been followed. See id. at 106.  

 -8-

stringent substantive limitation on the Hospital's discretion

that he has "a legitimate claim of entitlement," citing Laborde- 

Garciav. PuertoRico TelephoneCo., 993F.2d 265,267 (1stCir. 1993). 

 The existence of a detailed set of procedural rules is

clearly inadequate to create a constitutionally protected

property right. As Professor Tribe notes, "the existence of a

'careful procedural structure' is not enough," although he

characterizes such an approach as "narrowly formalistic."5 In

Hewitt v. Helms, 459 U.S. 460, 471 (1983), the Supreme Court made 

it clear that "a careful procedural structure," without more,

cannot create a constitutionally protected interest, saying

 It would be ironic to hold that when a State embarks on
 such desirable experimentation it thereby opens the
 door to scrutiny by the federal courts, while States
 that choose not to adopt such procedural provisions
 entirely avoid the strictures of the Due Process
 Clause.

The first part of appellant's argument therefore fails.6

 This brings us to appellant's last argument, that appellees'

discretion was so limited that appellant could reasonably expect

to obtain the desired status if he could present his case. The

Supreme Court articulated the possibility that where stringent
  

 5 Tribe, supra note 3, at 698. 

 6 This is not to say that it makes any policy sense to
enact comprehensive rules and then not apply them to those who,
facially, are covered by them. It may be that appellees feared
another lawsuit if they advanced reasons for their refusing to
grant courtesy privileges to appellant. Ironically, their
failure to follow their own rules, however, did not avoid another
lawsuit. But, while state law might command faithful adherence
to an institution's mandatory rules, and result in some remedy or
sanction, violating a procedural rule does not alone accomplish
the creation of a protectible constitutional interest.

 -9-

regulations strictly limit state officials' discretion, these

procedures may give rise to a constitutionally protected

interest. See Hewitt, 459 U.S. at 472. In that case, state 

statutes governing the placing of prisoners in administrative

segregation limited correction officials' discretion to

situations in which there was "a need for control," "a threat of

a serious disturbance, or a serious threat to the individual or

others," and notices, hearings, investigations, and release

conditions were the subject of mandatory provisions. Id. at 470- 

71 n.6. The Court held that "[T]he repeated use of explicit

mandatory language in connection with requiring specific

substantive predicates demands a conclusion that the State has

created a protected liberty interest." Id. at 472.  

 This is to be contrasted with the situation in Olim v. 

Wakinekona, 461 U.S. 238, 249 (1983), where, despite regulations 

requiring a hearing before an interstate transfer of an inmate,

the Court held that no state-created liberty interest was created

since the regulations did not impose "substantive limitations on

official discretion." The contours of "substantive limitations"

were discussed in Justice Brennan's concurring opinion in

Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 467 

(1971), cited with approval by the Olim court, as requiring that 

"particularized standards" and "objective and defined criteria"

guide the State's decision makers.

 Our own precedents are instructive. In Lombardo v. Meachum, 

548 F.2d 13, 15 (1st Cir. 1977), despite prison transfer

 -10-

regulations which contained a statement of purpose,

rehabilitation, and a directive to officials to treat inmates

"with the kindness which their obedience, industry and good

conduct merits," we held that no liberty interest had been

created since no significant limitations had been imposed on

officials' discretion in ordering transfers. 

 Quite a different situation was presented in Laborde-Garcia 

v. Puerto Rico Telephone Co., 993 F.2d 265 (1st Cir. 1993). A 

telephone employee sought treatment from the State Insurance Fund

within two months after a recent accident. See id. at 266. She 

was terminated from her job because the company concluded that

more than twelve months had elapsed since an earlier illness.

See id. The company argued that reinstatement was only an 

expectation of reemployment. See id. at 267. However, the 

statute required employers to "reserve" an employee's job and

"reinstate" the employee if "no more than 'twelve months' have

"lapse[d] . . . from the date of the accident." Id.  

 Then Chief Judge Breyer, writing for our court, said:

 [T]he workmen's compensation statute so narrows the
 government's discretion to refuse to reinstate Ms.
 Laborde (during the relevant twelve months) that it
 provides her with a 'legitimate claim of entitlement'
 to that continued employment. That is to say, local
 law's narrowing of the employer's discretion to decide
 not to reinstate means that Ms. Laborde could
 reasonably have believed, and relied upon her belief,
 that local law would likely permit her to remain
 employed. Id. 

 With these strictures in mind, we assess whether the

standards governing the Hospital's extension of privileges are so

particularized, objective, and defined, and also narrow the

 -11-

Hospital's discretion so significantly that an applicant in

appellant's position could be reasonably confident that he would

be granted courtesy privileges.

 To begin, the substantive standard set forth in the By-Laws

is that decisions must not be made arbitrarily, irrationally, or

capriciously. Contrary to appellant's argument, these words are

not synonymous with "just cause." Decisions could be wrong-

headed, based on false assumptions, overcautious or overzealous,

penny-pinching or open-handed, and exhibit a poor sense of

priorities and yet escape denomination as arbitrary, irrational,

and capricious. Moreover, in cases involving the kind of request

appellant was making, the burden of proving arbitrariness, etc.

had been placed on him. Not only that, but he had the severe

burden of proof by clear and convincing evidence. Finally, the

decision makers were entitled to arrive at a negative judgment

that the materials and information submitted failed "to establish

an acceptable basis for granting the application."

 We cannot believe that words of maximum generality and

minimum bite such as "arbitrary, irrational and capricious",

twice and perhaps three times diluted by the shifting of burden,

the heightening of required proof to carry the burden, and the

provision for a catch-all negative judgment of what was

"acceptable," suffice to create a constitutionally protectible

property right that could serve as the basis for compensatory and

punitive damages. Administrative officials generally are held

under administrative procedure acts to a standard free of

 -12-

arbitrariness, irrationality, and caprice. See Administrative 

Procedure Act, 5 U.S.C.A. 706(2)(A) (West 1996). It cannot be

that an explicit articulation of the same standard changes an

"abstract need or desire" into a protectible right. In short,

their discretion was not so circumscribed that such an interest

was created. 

 Affirmed. Only the Alejandro appellees are entitled to 

costs.7  

  

 7 Normally, a successful appellee is entitled to costs. In
this appeal we have found the Commonwealth's brief so unhelpful
that we depart from the usual rule.

 -13-