Albert LOMBARDO, Plaintiff, Appellant,

v.

Larry MEACHUM et al., Defendants, Appellees.

No. 76–1265.

United States Court of Appeals, First Circuit.

Argued Oct. 6, 1976.

Decided Jan. 20, 1977.

Anne Hoffman, Roxbury, Mass., for plaintiff, appellant.

Michael C. Donahue, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief for defendants, appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Plaintiff, Albert Lombardo, appeals from the district court's refusal to issue a preliminary injunction rescinding his transfer from Massachusetts Correctional Institute, Norfolk to MCI, Walpole. His contention, both here and below, is that the transfer violated both the due process clause and Massachusetts' own regulations. Because the case arose prior to the Supreme Court's recent decision in *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the district court, following our short lived rule of *Fano v. Meachum,* 520 F.2d 374 (1st Cir. 1975), *rev'd sub nom. Meachum v. Fano, supra,* assumed that procedural due process must be afforded inmates before they may be transferred, but it concluded that the hearing Lombardo received comported with due process. It also

rejected plaintiff's contention that the prison board had failed to obey its own regulations. We affirm, but, because *Meachum v. Fano* has changed one of the predicates for the district court's action, we do so in part on a different ground.

Lombardo's transfer to MCI, Walpole occurred because he was allegedly involved in an escape attempt of a fellow inmate, William Royce. After Lombardo was implicated in the escape attempt by several confidential informants, the prison officials notified him, on April 8, 1975, that a reclassification hearing would be held on April 16. The notice specifically informed Lombardo of the misconduct alleged, and it referred to the fact that some of the information leading to the proceeding came from informants. At the hearing, pursuant to its regulation, Department Order 4400.2 § 4.2a(7),[1] the Interinstitutional Classification Board, required Lombardo to leave during the portion of the hearing in which the informant testimony was presented. After hearing the information, the Board, presumably because it believed the safety of the informants would otherwise be jeopardized, then determined that none of the information received in camera could be disclosed to Lombardo. But when Lombardo returned, he was allowed to present evidence on his own behalf. The Board thereafter determined that a transfer was in order and, following administrative appeals, the transfer was effected.

Lombardo argues that the failure of the Classification Board to provide him with a summary of the informant testimony violated the due process clause of the Fourteenth Amendment.[2] The threshold question for our consideration is whether the transfer deprived Lombardo of a "liberty" or "property" interest within the meaning of that clause. Plaintiff recognizes that *Meachum v. Fano, supra,* which also involved the federal due process rights of transferees in Massachusetts prisons, held, on that record, that no liberty or property interests were involved and that the transferees, hence, had no federal procedural due process rights. *See also Montayne v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). The Court reasoned that a prisoner had no federally created liberty interest in remaining in a particular prison absent proof of specific acts of misconduct, *Meachum v. Fano, supra,* at 224–225, 96 S.Ct. 2532. While stating that the due process clause would be applicable if state law conferred such a right upon prisoners, the Court stated that "insofar as [it had been] advised, transfers between Massachusetts prisons are not conditioned upon the occurrence of specified events", *id.* at 226, 96 S.Ct. at 2539 and noted that the Massachusetts statutes provided that transfers could occur for any reason or for no reason. *See* Mass.Gen.Laws c. 127 §§ 20, 97. Although plaintiff argues that *Meachum* does not control the due process issue in this case, he concedes that, under the *Meachum* standard, a court's sole inquiry in determining the applicability of the due process clause to a transferee must be whether state law creates a substantive liberty interest.

---

1. This section of the regulations provides:

   "If during a meeting, a witness or staff member wishes to present oral or written informant information he shall state to the Board that he wishes to present such information to the Board without the resident or his representative being present. The Board shall then direct the inmate and his representative to leave the meeting while the informant information is presented to the Board. The Board shall also inquire into the reliability of the informant. It shall not be necessary for the Board to interview the informant in person. It may rely on oral or written hearsay testimony. After reviewing the testimony, the Board shall make a deter-

   mination as to the informant's reliability and the reliability of the information. The Board shall also make a determination as to the extent to which the resident may be informed of the nature of the information presented. The Board shall not hear informant information which has previously been presented to a disciplinary board. In such cases the Board shall limit its inquiry to the results of the disciplinary proceeding."

2. The district court rejected this argument, reasoning that *Wolff v. McDonnell,* 418 U.S. 539, 568–69, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), indicated that a prison hearing board has broad discretion to determine whether and when informant testimony must be made available.

To avoid *Meachum's* implicit holding regarding the state of Massachusetts law, Lombardo claims that, because of the theory upon which that case was tried, the Court did not have before it a record upon which it could rule on the question whether Massachusetts law creates a substantive right to remain in a certain type of institution, absent specific misconduct, and they argue that the Court's "insofar as [it was] advised" language indicates that it reserved decision on this question. Plaintiff proceeds to refer to a number of statutory and regulatory provisions which, in his view, establish the specific claim of entitlement the Court found lacking in *Meachum v. Fano.*

While we agree that the Court's decision did not purport to be the last word on the state of Massachusetts law, the statutes and regulations Lombardo invokes do not, in our view, establish that Massachusetts law limits transfers to those instances in which specified events have occurred. The only statutory provisions that specifically deal with the issues of classification and transfer place no limitations on the discretion of the prison officials. Mass.Gen.Laws c. 127 §§ 20, 97. While plaintiff refers to a number of other statutory provisions as creating substantive rights in the prisoners to remain in certain prisons absent misconduct, we fail to see how any of these can be said to create specific rights in individual inmates.[3]

The provisions appear to be either general statements of the purposes of the Massachusetts system of corrections, see *id.* § 1(e) (rehabilitative purpose of institution), § 1(f) (purpose of classification system is to develop rehabilitation program for each such person) or general directives to the correctional system as to how to treat inmates ("with the kindness which their obedience,

industry and good conduct merit"), *id.* c. 127, § 32. The extent to which these provisions create any enforceable substantive rights in the individual inmates is unclear, but whether or not they do, we see no basis either in the statutes themselves or in Massachusetts case law for concluding that these provisions somehow condition the statutes explicitly governing interinstitutional transfer. Nor do they confer upon individual inmates a right not to be transferred absent a showing that specified events have occurred. See *Bishop v. Woods,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); compare *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

The regulations plaintiff relies upon—which were not in effect at the time of the hearing in *Meachum v. Fano*—simply provide that an inmate will receive a certain type of a hearing before he is reclassified. The regulations contain no standards governing the Commissioner's exercise of his discretion, and they, therefore, can not create the kind of substantive interest which is required before a state created "liberty" interest can be said to exist. Plaintiff's contention that the existence of a substantive "liberty" interest must be inferred from these regulations is refuted by *Meachum v. Fano* itself. There the fact that the regulations then in effect were interpreted as entitling the inmate to some kind of a hearing—albeit one which, in our view, did not comport with due process standards, see *Fano v. Meachum, supra,* 520 F.2d at 379–80—did not deter the Supreme Court from concluding that, on the record before it, state law created no liberty interest. See also *Bishop v. Woods, supra* (state law created no enforceable contract right, but required procedural safeguards. Held: no property interest existed). *Compare Arnett*

---

3. We recognize that the Massachusetts courts could subsequently interpret these statutory provisions as creating the enforceable substantive liberty interest we, and the *Meachum* Court, find lacking. If it were to do so, transferees like Lombardo would be entitled to federal procedural due process. See *Bishop v. Woods,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d

684 (1976). The issue of the effect of the Massachusetts statutory provisions has, of course, been submitted to this court, and because the resolution of this question does not strike us as so difficult that certification of it to the Massachusetts Supreme Judicial Court would be appropriate, we decide the question ourselves.

*v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). We do not regard it as inconceivable that substantive protections could be inferred from the existence of procedural safeguards but where, as here, the practice is that there are no limitations on the administrator's discretion in these matters, we see no basis for doing so.

Having concluded that the due process clause is not applicable, we now turn to consider plaintiff's claim arising from the alleged misapplication or misinterpretation of the relevant state regulations. We observe preliminarily that this claim arises exclusively under state law.[4] Here, the sole basis for the exercise of federal jurisdiction over Lombardo's state law claim was that, at the time the action was instituted, Lombardo presented a substantial federal claim, and the state claim arose from the same nucleus of operative facts. *See UMW v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Although we think pendent jurisdiction principles support the continued exercise of federal jurisdiction over the state law claim in this case,[5] *see id.* at 726–27, 86 S.Ct. 1130, we observe that, unless Massachusetts hereafter takes such action as to create a liberty interest in inmates in a reclassification context, our holding today will require that state law claims like Lombardo's be heard in state court since, under the existing Massachusetts statutes and the presently governing federal law, there is no substantial federal due process claim to which such state law claims may be appended. *See Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

■ On the merits, Lombardo claims that the Board, under its Department Order 4400.2 § 4a(7), was required to make a determination as to the extent to which Lombardo could hear the information presented in camera, but that it failed to do so.[6] The basis for Lombardo's assertion is that the presiding officer at the hearing testified below that, although she was not certain because she did not have her notes with her, some of the information presented at the hearing and not disclosed to plaintiff may have been from a non-informant source. The presiding officer, however, also testified that the disclosure of this information would have specifically identified the informant. In finding that the board fully complied with its regulations, the district court must have concluded either that the presiding officer's testimony could not provide a basis for finding that the information in question was derived from noninformant sources or that the regulation was properly interpreted as permitting the nondisclosure of any information which could lead to the identification of an informant. In either case, we fail to see that the district court abused its discretion in failing to enter a preliminary injunction. *See Hochstadt v. Worcester Foundation,* 545 F.2d 222 (1st Cir. 1976). If it concluded that plaintiff had not satisfied his burden of proving that noninformant testimony was not disclosed, this conclusion was reasonable given the ambiguity of plaintiff's evidence.

---

**4.** Plaintiff urges that the prison officials' alleged failure to provide him with the safeguards required by their own regulations violates the due process clause of the Fourteenth Amendment. We need not decide whether a state agency's noncompliance with its announced procedures can ever give rise to a federal due process claim. *Compare United States v. Leahey,* 434 F.2d 7 (1st Cir. 1970). Plaintiff, here, has no federal due process protections because, as our earlier discussion establishes, any violation of the state prison regulations did not result in a deprivation of "liberty" within the meaning of the Fourteenth Amendment. Whatever state created rights plaintiff has in the correct application of these regulations, he has no protected interest under the due process clause of the Fourteenth Amendment. We express no opinion on whether a prisoner who is denied procedural protections that are afforded inmates who are similarly situated might have an equal protection claim.

**5.** This is not to say that the district court would not, following remand, have the discretion to dismiss the state law claim without prejudice at this stage of the proceedings. *See id.* 383 U.S. at 726–27, 86 S.Ct. 1130.

**6.** Plaintiff also maintains that the prison officials were obliged, under their regulations, to proceed against him first in a disciplinary proceeding. We see no basis for this contention.

If, on the other hand, it proceeded on the theory that the regulation was properly interpreted as permitting the nondisclosure of certain noninformant information, we cannot—given the presumably narrow scope of judicial review over a Massachusetts' agency's interpretation of its own regulations— say that this was improper. We recognize that, if there is to be further factual development in this case, it could place these issues in a different light, but on this record, we see no abuse of discretion.

*Affirmed.*