Robert J. DAIGLE et al., Plaintiffs,
Appellants,

v.

Frank A. HALL et al., Defendants,
Appellees.

No. 77–1281.

United States Court of Appeals,
First Circuit.

Argued Sept. 14, 1977.

Decided Nov. 9, 1977.

Dennis P. Flanagan, Boston, Mass., for appellants.

Michael C. Donahue, Asst. Atty. Gen., Chief, Violent Crime Unit, Boston, Mass.,

with whom Francis X. Bellotti, Atty. Gen., and John P. Corbett, Asst. Atty. Gen., Boston, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and WOLLENBERG, District Judge.*

COFFIN, Chief Judge.

Appellants, inmates in the Massachusetts Correctional Institution at Walpole, brought this suit alleging that their transfers from the general population to the Departmental Segregation Unit (DSU) deprived them of due process of law. We must first decide what process, if any, was due.

In *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), the Supreme Court held that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed upon him and are not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Id.* at 242, 96 S.Ct. at 2547. It is clear to us that both of these conditions exist in this case. First, the DSU is part of the Massachusetts prison system to which these inmates were sentenced. We are pointed to nothing in the order of the sentencing judge that puts the DSU beyond the bounds of their sentences. No liberty interest springs up to protect inmates from transfer to DSU simply because they are originally placed in the less unpleasant surroundings of the general population. *See Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Second, we have already held that conditions of confinement in the DSU at Walpole do not of themselves violate the Eighth Amendment. *O'Brien v. Moriarty,* 489 F.2d 941 (1st Cir. 1974). Appellants have not demonstrated that conditions have so deteriorated as to require a contrary conclusion in this case.

Thus freedom from transfer between the general population and DSU is not a "liberty interest" protected by the Fourteenth Amendment in itself. This conclusion was, of course, implicit in our decision in *Four Certain Unnamed Inmates v. Hall,* 550 F.2d 1291 (1st Cir. 1977), in which we denied any due process relief to inmates who, like the inmates in this case, were transferred from the general population to the DSU at Walpole. As we recognized there, appellants, in order to trigger federal guarantees of procedural due process, must show "some right or justifiable expectation rooted in state law that [they] will not be transferred except for misbehavior or upon the occurrence of other specified events." *Id.* at 1292, quoting *Montayne v. Haymes, supra,* 427 U.S. at 242, 96 S.Ct. 2543.

Because *Four Certain Unnamed Inmates* was decided under the same statute and regulations that governed the transfer in this case, we ought not to have to address the issue again. We do so only because in that case we did not expressly distinguish the statutes and regulations dealt with in *Meachum v. Fano, supra,* and *Lombardo v. Meachum,* 548 F.2d 13 (1st Cir. 1977), governing transfer between institutions, from those relevant to transfers within an institution.[1]

Mass.Gen.Laws Ann., ch. 127, § 39 (1974), authorizes transfer to the DSU of inmates "whose continued retention in the general institution population is detrimental to the program of the institution." Retention in the general population may become "detrimental" for any number of reasons. The statute does not "confer upon individual inmates a right not to be transferred absent a showing that specified events have occurred." *Lombardo, supra,* 548 F.2d at 15.

Nor does D.O. 4450.1 confer such a right. Paragraph 1, the statement of the DSU's purpose, states that DSU is necessary to house inmates who behave disruptively, creating "serious management problems and/or security hazards." It does not attempt to set out a precise standard against

---

* Of the Northern District of California, sitting by designation.

1. Even so, the regulations governing reclassification, which we held do not impose substantive standards on the transfer decision, *Lombardo, supra; Four Certain Unnamed Inmates, supra,* apply equally to either context.

which one might measure an inmate and conclude that he was outside the purpose of the DSU. It does not say who does not belong in the DSU. Moreover, to the extent it does comment on the type of inmate who will be placed in the DSU, it merely explains the statutory standard, defining "detrimental to the program of the institution" to mean "creating serious management problems and/or security hazards for staff and/or inmates." The definitional paragraph, ¶ 3.2, merely sets out a list of examples of types of inmates who may be confined in the DSU. It does not define any groups who may not be confined in the DSU.

Appellants claim that in general, and in their particular cases, specific acts of major misconduct trigger transfers to the DSU. *Meachum v. Fano, supra,* 427 U.S. at 228, 96 S.Ct. at 2540, however, renders that fact immaterial, so long as the prison official's discretion is not limited to acts of serious misconduct, because "no legal interest or right . . . would have been violated by their transfer whether or not their misconduct had been proved in accordance with procedures that might be required by the Due Process Clause in other circumstances." As we have found, the same is true in this context.[2]

In addition to their Fourteenth and Eighth Amendment claims, appellants argue that the district court abused its discretion in refusing to accept supplemental pleadings and in refusing to certify certain questions for decision by a state court. Neither claim merits extended discussion. The supplemental pleadings would have greatly broadened the cause of action. The court decided that the original cause of action should be dismissed on its substance. The claims included in the supplemental pleadings are not barred should appellants choose to bring a new suit. The requested abstention concerned an issue of state law that was not particularly difficult—the

meaning of the statute and regulations discussed above. We hold that the court did not abuse its discretion in either instance.

Appellants now assert that even if they lose on all their federal claims, we should at least remand the case for determination of whether appellees violated state law by failing to observe their own regulations.[3] This claim, however, was never raised below. Appellants relied exclusively on federal causes of action. There is no pendent state law claim for us to consider.

*Affirmed.*

---

**2.** Given this finding, we can see no significance to the fact that the prison officials chose to give hearings before some transfers to the DSU, but not before those precipitated by an act that was being referred to a district attorney for investigation.

**3.** *See Lombardo v. Meachum,* 548 F.2d 13, 16 (1st Cir. 1977).