Stephen Matthew DEVANEY, Plaintiff,

v.

Frank A. HALL et al., Defendants.

Civ. A. No. 78–475–G.

United States District Court,
D. Massachusetts.

March 12, 1981.

Stephen Devaney, pro se.

Robert A. Stolzberg, Boston, Mass., Dangel & Sherry, P. C., Boston, Mass., Court appointed, for plaintiff.

Lee Carl Bromberg, Sp. Asst. Atty. Gen., Leah S. Crothers, Asst. Atty. Gen., Boston, Mass., for defendants.

GARRITY, District Judge.

Plaintiff Devaney, formerly an inmate at the Massachusetts Correctional Institution, Walpole (hereinafter MCI, Walpole), filed this action *pro se* on February 21, 1978. Devaney complains that the defendants, officers and employees of the Department of Corrections, failed to provide him with the procedural due process to which he was entitled in connection with certain disciplinary actions and with his transfer to protective custody status at MCI Walpole. He seeks monetary damages from the defendants pursuant to 42 U.S.C. § 1983 and Mass. G.L. c. 127, § 32.

The defendants moved to dismiss Devaney's complaint on April 27, 1978. Counsel was appointed to represent Devaney on September 6, 1978, who then filed an Amended Complaint on July 31, 1979. Defendants again moved to dismiss, in response to which Devaney filed a Second Amended Complaint on November 13, 1979. The defendants' motion was referred to Magistrate Cohen, who dismissed it without prejudice to renewal as a motion for summary judgment pursuant to Fed.R.Civ.P. 56. Upon completion of discovery, the defendants moved for summary judgment on June 5, 1980. Devaney responded by moving for partial summary judgment on the issue of liability on all five counts of the complaint. We heard oral argument. For the reasons discussed below, we grant defendants' motion for summary judgment and deny plaintiff's motion for partial summary judgment.

Plaintiff alleges deprivation of his due process rights in connection with five incidents while he was an inmate at Walpole, each set forth in a separate count in the complaint. All five counts involve Deva-

ney's transfer to the Departmental Segregation Unit (DSU), Block 10 at Walpole. Four of the transfers resulted from disciplinary proceedings that were accompanied by the loss of "good time". One transfer followed an administrative determination to place Devaney in protective custody after prison officials had received information that his life would have been in jeopardy if he had remained in the prison's general population. We will treat each of the counts separately.

## Count I

Plaintiff was removed from the general population at Walpole to a security room in the DSU, Block 10, on July 31, 1976. His transfer was the result of a Disciplinary Report filed on July 30 by defendant Lambirth, then an Institutional Disciplinary Officer. The Disciplinary Report, No. 12826, alleged that "As a result of my investigation and reliable informant information it has been learned that: on Friday, July 30, 1976, during the supper meal in Block # 3, you, Stephen DEVANEY, did assault and beat upon inmate George H. GOODWIN."[1] Devaney was notified on August 1, 1976 that Lambirth was investigating an alleged disciplinary infraction, but did not see a copy of Disciplinary Report No. 12826 until he was served with a Notice of Disciplinary Action on August 12, 1976.[2] A hearing on this charge was held before the Disciplinary Board on August 17, 1976. Devaney alleges that this hearing, which resulted in the Board's finding him guilty and in his loss of 60 days' good time and 10 days in isolation, was procedurally defective in two respects. First, he claims that he was arbitrarily denied permission to call a witness to the hearing, i. e., the alleged victim, George Goodwin, pursuant to an across-the-board institutional policy not to allow inmate witnesses to testify orally at disciplinary hearings held in the DSU, Block 10. Second, he claims that the statement of reasons given for the disciplinary action taken against him at the August 17 hearing was not adequate. Devaney asserts that he is entitled to partial summary judgment on the issue of liability since these defects do not meet the procedural standards outlined in *Wolff v. McDonnell*, 1974, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935.

The minutes of the August 17 hearing reveal that the following transpired:

8–17–76. Chair cited report. Inmate states he has no attorney, that he called Harvard Law & they would not accept a collect call. He then called his parents who said they would call them for someone to represent him. No attorney present. Inmate asked for continuance, chairman denied this. Inmate asked for assaulted inmate, this also denied. Inmate denies he assaulted Goodwin & that he & Goodwin are friends. Reporting officer came forward & stated the informant was reliable.[3]

Later in the day of August 17, Devaney was given a copy of the Board's decision and finding of fact. It stated:

After questioning the reporting officer & reading the testimony of the defense the board found the informant information to be reliable. The board also found that disclosure of the informant would create a substantial risk of harm to that informant.[4]

The defendants testified by affidavit that Devaney's request to call Goodwin as a witness was denied because of the fear of reprisals against him, especially in view of the fact that the victim Goodwin was the informant.[5]

---

1. Answers and *Objections of defendant Frederick A. Butterworth to Plaintiff's Interrogatories, Document I–C (hereinafter "Butterworth Answers").

2. See Butterworth Answers, Documents I–D and I–E.

3. Affidavit of James R. Lambirth, Exhibit C ("Inmate's Statement or Other Pertinent Information at Hearing").

4. Butterworth Answers, Document I–I.

5. Affidavit of James R. Lambirth, ¶ 8; Answers and Objections of Defendant Oliva Langlois to Plaintiff's Interrogatories, ¶ 4(d).

■ We first consider Devaney's claim that the Board's denial of his request to call Goodwin as a witness violated his procedural due process rights. The Supreme Court in *Wolff, supra* at 566, 94 S.Ct. at 2979 held that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." The First Circuit Court of Appeals has recently refined the contours of this limited right in *Hurney v. Carver*, 1 Cir., 1979, 602 F.2d 993, stating at 995,

> To state a claim, then, which will survive a Rule 12(b)(6) dismissal, it is not sufficient merely to allege that complainant's requests to call witnesses or submit written statements at a prison disciplinary hearing were denied, even if it is additionally alleged that the disciplinary board did not express its reasons for the denial. To state a valid claim, it must be alleged that the inmate's requests were denied for reasons not having to do with institutional security or correctional goals, and that the prison officials, in ruling as they did, clearly abused their considerable discretion in such matters.... Moreover, these allegations must be backed up with enough supportive facts to outline the elements of the pleader's claim. [Citations omitted.]

The plaintiff is therefore under a heavy burden to show that the prison officials' refusal of the request to call a defense witness had nothing to do with institutional security or correctional goals. Judicial review of prison officials' actions, especially those taken to preserve institutional security, is very limited. The Supreme Court has recently recognized the broad discretion of prison officials in this area:

> [t]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Bell v. Wolfish*, 1979, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447.

■ The issue we must address is whether the defendants' "across the board" policy of permitting only written statements of witnesses in disciplinary hearings held in Block 10 [6] is arbitrary and is not reasonably justified by concerns for institutional security. Defendants indicate that inmates are aware of this policy, and that the practice at Walpole is to print on the face of the Notice of Disciplinary Hearing given to inmates in Block 10 that "only written statements will be accepted" under the heading for "Request for Representation and/or Witnesses." [7] They further indicate that inmates have adequate opportunities to obtain written statements from witnesses in Block 10 and in the general population prior to the hearing.[8]

The Superintendent of MCI Walpole, Fred Butterworth, in his supplemental answers to plaintiff's interrogatories, advanced the following justifications for the restrictive witness policy for the DSU, Block 10:

> First, inmates assigned to Block 10 are more assaultive and manipulative and more likely to attack fellow inmates; to pressure others to be witnesses whether they desired to or not; and to generally create the potential for inmate-against-inmate confrontation. Second, any Block 10 inmate attending a Disciplinary Board hearing would have to be escorted by two (2) correction officers because of the likelihood that he would be assaultive against guards. This would remove officers from

6. Affidavit of James R. Lambirth, ¶ 12.

7. Answers and Objections of defendant Oliva Langlois to Plaintiff's Interrogatories, ¶ 23.

8. Supplemental Answers of the defendant Oliva Langlois to Plaintiff's Interrogatories, ¶ 25; Supplemental Answers of the defendant Fred A. Butterworth to Plaintiff's Interrogatories, ¶ 27.

their regular security duties within the Block.[9]

In view of these considerations we find that the restrictive witness policy is not arbitrary nor beyond the discretion of prison authorities to adopt. We therefore grant summary judgment for the defendants on this claim in Count I.[10]

■ Second, we find that the statement of reasons given to Devaney for the disciplinary action taken against him at the August 17 hearing, though not detailed, sufficiently informed him of the basis of the Board's decision. The Disciplinary Report notified Devaney of the date, place, and nature of the offense and the identity of the victim. The summary of reasons indicates the Board's decision was based on the testimony of the reporting officer and on the reliability of the informant. The records of the proceeding are sufficient to permit review of the Board's decision. *See Wolff, supra,* at 565, 94 S.Ct. at 2979. Accordingly, we grant the defendants' motion for summary judgment on this claim of Count I. Count I is thereby dismissed with prejudice.

### Count II

This count involves plaintiff's transfer to the DSU, Block 10, on November 1, 1976.

The Associate Deputy Superintendent at MCI Walpole, Albert Carr, ordered Devaney's transfer to Block 10 to keep him in "protective custody." Carr had received a phone call from Lieutenant William Bergen of the Massachusetts State Police, a detective assigned to the Norfolk County District Attorney's office, informing Carr that threats had been made against Devaney's life.[11] After reviewing the situation with Superintendent Butterworth the next day, Carr went to Devaney's cell to tell him the substance of Bergen's phone call and the threats purportedly made against his life. Carr told Devaney that if he would sign a statement saying that he was not in fear of his life, Carr would transfer him back to the general population. Devaney refused to put anything in writing, and Carr decided to keep Devaney in Block 10 in "protective custody" under "awaiting action" status.[12] Devaney asked for a written statement of reasons for his transfer, but never received any.[13]

Plaintiff claims that this transfer was effected without any of the procedural protections he believes must be accorded him before he may be transferred to "protective custody" in Block 10. In support of this claim, Devaney asserts that the rule of *Meachum v. Fano,* 1976, 427 U.S. 215, 96

---

**9.** Supplemental Answers of the defendant Fred A. Butterworth to Plaintiff's Interrogatories, ¶ 26.

**10.** Summary judgment for the defendants is also warranted purely under the circumstances outlined in Count I. In *Baxter v. Palmigiano,* 1976, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810, the Court reaffirmed *Wolff, supra,* and extended the discretion of prison authorities to deny inmates the right to confront and cross examine *adverse* witnesses such that this right is even more limited than the right to call defense witnesses. "Mandating confrontation and cross-examination, except where prison officials can justify their denial on one or more grounds that appeal to judges, effectively preempts the area that *Wolff* left to the sound discretion of prison officials." *Baxter, supra,* at 322, 96 S.Ct. at 1559.

In Devaney's case in Count I, permitting him to call Goodwin as a witness would essentially be permitting cross-examination and confrontation, since Goodwin was both the informant and the victim. We find that these circum-

stances alone justify the prison officials' refusal of Devaney's request to call Goodwin.

**11.** Affidavit of Albert Carr, ¶ 4.

**12.** Affidavit of Albert Carr, ¶ 7; Department Order 4400.2, Guidelines for the Operation of the Reclassifications Process, ¶ 4.2a(2). Devaney remained in this status until January 20, 1977, when a disciplinary board found him guilty of committing a general disturbance, disobeying the order of an officer, and threatening an officer on January 6, 1977. Affidavit of Fred A. Butterworth, ¶ 4. We agree with the defendants that Devaney's complaint relating to his request that Carr provide him with a written statement of the reason he was being held in Block 10, made on March 28, 1977, is disingenuous. Defendants' Memorandum in Support of their Motion for Summary Judgment, p. 8.

**13.** Answers and Objections of defendant Albert Carr to plaintiff's interrogatories, ¶ 9.

S.Ct. 2532, 49 L.Ed.2d 451; *Lombardo v. Meachum*, 1 Cir., 1977, 548 F.2d 13; and *Daigle v. Hall*, 1 Cir., 1977, 564 F.2d 884, that a transfer to the DSU, Block 10, at Walpole pursuant to prison regulations does not implicate a liberty interest of the transferred inmate, is no longer valid in view of the subsequent Massachusetts Supreme Judicial Court decision in *Blaney v. Commissioner of Correction*, 1978, 374 Mass. 337, 372 N.E.2d 770.

In this case, defendant Carr transferred Devaney to the DSU in protective custody status pursuant to Department Order 4400.-2, Guidelines for the Operation of the Reclassification Process, ¶ 4.2a(2), which provides:

> Where the Deputy Commissioner for Classification and Treatment or Superintendent or his designee determines at any time prior to or during this proceeding that there is an immediate threat to the health or safety of the resident or to others, the resident may be placed in an awaiting action status until there is a final decision about a transfer.

*Lombardo* held that neither the Department's reclassification regulations nor Mass. G.L. c. 127, § 20 governing classification, limit the discretion of prison officials to transfer inmates to the DSU under Mass. G.L. c. 127, § 39, which authorizes the transfer of an inmate to a segregated unit when his "continued retention in the general institution population is detrimental to the program of the institution." *Lombardo, supra*, 548 F.2d at 15. *See Daigle v. Hall, supra*, 564 F.2d at 885. Subsequent to these decisions, however, the SJC construed Mass. G.L. c. 127, § 32, in *Blaney, supra*. Section 32 provides that:

> The superintendents of the institutions, under the supervision of the Department of Correction, shall treat the prisoners with the kindness which their obedience, industry and good conduct merit.

The SJC construed this section to mean that "protective custody inmates are entitled, in principle, to the standard of treatment they would receive in the classifications to which normally they would be severally assigned,

modified negatively, however, to the extent made necessary by . . . special security . . . measures." *Blaney, supra*, 374 Mass. at 341, 372 N.E.2d 770.

*Blaney* involved a class action brought on behalf of protective custody inmates held in the DSU, Block 10 at Walpole. A single justice had affirmed a finding by a special master that the conditions of Block 10 "were less agreeable to inmates than custodial conditions in the general prison population at Walpole." *Blaney, supra*, at 338, 372 N.E.2d 770. However, "Block 10 was regarded . . . as the safest place at Walpole." *Id.* "Reasonable protective custody" was held to require safe confinement, and rights "to exercise, to have visits, to associate with certain other inmates, and to be out of . . . cells for not less than three hours a day." *Id.* at 341, 372 N.E.2d 770. Finally, the court found that "reasonable protective custody was not being afforded in Block 10." *Id.* at 339, 372 N.E.2d 770.

█ We find that *Blaney* and § 32 sufficiently limit the discretion of prison officials to transfer "protective custody" inmates to Block 10 to implicate a protected liberty interest of inmates so transferred. This statute, as construed, explicitly conditions the authority of prison officials to confine inmates in "protective custody" status in Block 10. However, such confinement does not involve a loss of the same magnitude as forfeited good time, and the process due a prisoner deprived of the privileges of protective custody confinement outlined in *Blaney*, "modified negatively to the extent made necessary by . . . special security . . . measures." *Id.* at 341, 372 N.E.2d 770, is uncertain. The Supreme Court has stated: "[W]e are unable to consider the degree of 'liberty' at stake in loss of privileges and thus whether some sort of procedural safeguards are due when only such 'lesser penalties' are at stake." *Baxter, supra*, 425 U.S. at 323, 96 S.Ct. at 1560.

█ However, in view of the state of the law at the time of Devaney's transfer, *see, e. g., Lombardo, supra*, and *Daigle, supra*, and the circumstances of this transfer, we find that the defendants in this case are

entitled to a qualified good faith immunity from monetary damages. Therefore we find that summary judgment is appropriate for the defendants on this issue. *Procunier v. Navarette*, 1978, 434 U.S. 555, 561–62, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24; *Maiorana v. MacDonald*, 1 Cir., 1979, 596 F.2d 1072, 1077. Count II of plaintiff's complaint is dismissed.

## Count III

■ Devaney claims in this count that he was disciplined for his refusal on August 8, 1977 to obey an order transferring him back to general population, Block B–2, from his protective custody confinement in Block 10. Devaney refused to obey Correctional Officer Bacci's order in spite of the fact that he stated at the time that he was not in fear of his life. Bacci thereupon filed Disciplinary Report No. 14324. The Disciplinary Board found Devaney guilty of disobeying an order of a staff member on August 24, 1977. Devaney asserts that defendant Butterworth's order of August 8 that Devaney be transferred to Block B–2 from Block 10 did not comply with Department of Correction Order 4400.2 ¶ 4.2b, and therefore he could not be disciplined for refusing to obey such a procedurally defective order.

We find no abuse of discretion on the part of the prison authorities either in ordering Devaney's transfer nor in the discipline ensuing from Devaney's refusal to obey Officer Bacci's order. *See Lombardo, supra; Daigle, supra.* Devaney admits that he was not in fear of his life at this time, and that the reason for his refusal to obey orders of transfer to general population from the DSU was the "strategy" Devaney developed in contemplation of the initiation of this lawsuit.[14] This "strategy" was conceived after his initial transfer to protective custody by defendant Carr in November, 1976. Hence, Devaney refused assignments to the general population in November 1976, on August 3, 1977,[15] and on this occasion, August 8.[16] Accordingly, we find no abuse of discretion on the part of the defendants in disciplining Devaney for his refusal to obey this assignment order, *Lombardo, supra*, 548 F.2d at 15, and therefore Count III is dismissed.

## Count IV

■ Devaney was accused of insolence to a staff member and disruptive conduct on August 20, 1977, as specified in Disciplinary Report No. 14367.[17] On August 22, 1977, Correctional Officer Paul Grenier gave Devaney a Notice of Disciplinary Hearing and a form, "Request for Representation and/or Witnesses," [18] which Devaney filed. The hearing was originally scheduled for August 24, 1977, but was continued to September 1 at Devaney's request.[19]

Devaney asserts that the hearing was procedurally defective in three respects. First, he was denied a copy of the newly promulgated disciplinary rules, Department Order 4310.1A, Code of Human Services Regulations, Title 3 (Corrections), Ch. IV (Inmate Management), Part 430 (Disciplinary Actions). Second, his request for witnesses was denied. Third, his request for counsel or an inmate substitute was denied. Under the circumstances of this count, which we will further elaborate, we find that the Disciplinary Board's denials were not an abuse of discretion, and that the hearing adequately complied with the procedural requirements of *Wolff, supra.*

First, Devaney received adequate notice of the charges against him on August 22, 1977, well in advance of the hearing. Officer Vital's Disciplinary Report, No. 14367,[20] details the verbal abuse he received from Devaney while Officer Vital was distributing evening meals in Block 10 on August 20.

14. Deposition of Stephen M. Devaney, pp. 46, 53, 55–56, 89, 100.

15. Affidavit of Fred A. Butterworth, ¶ 8.

16. Deposition of Stephen M. Devaney, pp. 55–56.

17. Butterworth Answers, Document IV–A.

18. Butterworth Answers, Document IV–B.

19. Butterworth Answers, Document IV–C.

20. Butterworth Answers, Document IV–C.

After Officer Vital confronted him, Devaney continued to scream and yell and was soon joined by the other inmates in the cellblock. The offenses were labelled "Insolence to a Staff Member" and "Disruptive Conduct." Second, the summary of evidence of the hearing held September 1, 1977 indicates the Board based its finding of guilty on Devaney's statement that his comments to Officer Vital were the product of a "natural mistake." [21] Third, Devaney was granted a continuance, from August 24 to September 1, to prepare his defense and to obtain counsel. Fourth, copies of the new regulations were distributed to all inmates, and extra copies were available in Block 10 as well as in the prison law library.[22] Supervisor Lambirth testifies in affidavit that he personally supervised the distribution of copies of the new rules to all inmates on August 1, 1977.[23]

In view of the widespread availability of the disciplinary rules throughout the prison, the specificity of the notice of charges received by Devaney, the lack of complexity of the charges against him, and his admitted "strategy" developed prior to this hearing to orchestrate the events of his confinement in contemplation of this lawsuit, we do not find that the Disciplinary Board's denial of his request for a copy of the disciplinary rules during this hearing violated Devaney's due process rights. Likewise, the denial of Devaney's request for witnesses does not implicate a violation of his constitutional rights for the reasons discussed in Count I, *supra; see Harvey v. Carver, supra.* Finally, there is no indication that the charges against Devaney were so complex as to give rise to his right to assistance from another inmate or staff personnel. See *Wolff, supra* 418 U.S. at 570, 94 S.Ct. at 2981, *Hurney, supra* 602 F.2d at 994. Accordingly, Count IV is dismissed.

---

**21.** Butterworth Answers, Document IV–C; Supplemental Answers of the defendant Oliva Langlois to Plaintiff's Interrogatories, ¶ 19.

**22.** Deposition of Stephen M. Devaney, p. 63; Butterworth Answers, ¶ 25; Langlois Answers, ¶ 16.

*Count V*

■ This count involves a disciplinary action taken against Devaney for allegedly setting fires in a trashcan in his cellblock on August 30, 1977, as specified in Disciplinary Report No. 14420.[24] Devaney complains that again, at the hearing held September 7, 1977, the Disciplinary Board arbitrarily denied his request for a copy of the disciplinary rules, witnesses, and for counsel or substitute counsel. These are the same complaints as were alleged in Count IV. We find that the procedures followed in this disciplinary hearing adequately meet the procedural standards of *Wolff, supra,* and that the denial of Devaney's requests were not arbitrary for the reasons set forth under Counts I and IV *ante.* Accordingly, Count V is dismissed. '

*Conclusion*

Summary judgment is granted for defendants on all counts, and plaintiff's motion for partial summary judgment is denied.

---

**23.** Affidavit of James R. Lambirth, ¶ 11.

**24.** Butterworth Answers, Document V–A.