**Michael P. PARENTI, Plaintiff,**

v.

**Joseph J. PONTE et al., Defendants.**

**Civ. A. No. 82–1448–G.**

United States District Court,
D. Massachusetts.

June 17, 1983.

Martin E. Levin, Asst. Atty. Gen., Boston, Mass., for defendants.

Thomas E. McDonald, Warner & Stackpole, Boston, Mass., for plaintiff.

## MEMORANDUM AND ORDER ALLOWING DEFENDANTS' MOTION TO DISMISS

GARRITY, District Judge.

Plaintiff is a prisoner at Walpole State Prison. He claims a denial of due process because he was transferred to a "Departmental Segregation Unit" (DSU) within the prison by a tribunal that allegedly was not impartial. This allegation of administrative partiality is predicated on the participation of a particular corrections officer. Timothy Hall, both as a member of the panel that decided to transfer plaintiff to the DSU, and as a witness against the plaintiff at a prior related disciplinary hearing.[1] Defendants, employees and officials of the Massachusetts Department of Correction, have filed a motion to dismiss on the grounds that plaintiff has failed to state a claim upon which relief may be granted because his transfer did not affect a constitutionally protected liberty interest.

The Constitution requires due process of law only when governmental action compromises a liberty or property interest. Plaintiff has asserted no property interest, but contends that inmates have a liberty interest to remain within the general prison population. The Supreme Court has held that the due process clause of the Fourteenth Amendment independently creates no such interest, but that state statute and regulations may create liberty interests triggering constitutional protection. *See, e.g., Hewitt v. Helms,* —— U.S. ——, —— ———, 103 S.Ct. 864, 869–71, 74 L.Ed.2d 675 (1983), *Olim v. Wakinekona,* —— U.S. ———, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).

The critical question posed by defendants' motion for summary judgment, therefore, is whether Massachusetts, by its statutes and regulations, has created a protected interest in not being transferred from the general prison population for nonpunitive reasons. This issue has been considered by the Court of Appeals for the First Circuit, which decided that the relevant Massachusetts statute, M.G.L. c. 127, § 39, does not restrict official discretion in transferring inmates to a DSU, and therefore does not create a liberty interest requiring the protection of due process. *See Four Certain Unnamed Inmates v. Hall,* 1 Cir.1977, 550 F.2d 1291, 1292. The First Circuit also has held that the relevant regulation, because "[i]t does not attempt to set out a precise standard against which one might measure an inmate and conclude that he was outside the purpose of the DSU," fails to trigger a constitutionally protected right.[2] *Daigle v. Hall,* 1 Cir.1977, 564 F.2d 884, 885–6.

Defendants' motion to dismiss would have presented this court with the simple task of following directly applicable First Circuit decisions had the Supreme Court not recently decided *Hewitt v. Helms, supra.* In *Hewitt,* the Court ruled that Pennsylvania's statutory provisions governing intra-prison transfers to nonpunitive segregation units, by employing "explicitly mandatory language in connection with specific substantive predicates," did create a liberty interest triggering the due process guarantees of the Fourteenth Amendment. —— U.S. at ——, 103 S.Ct. at 871. The Massachusetts regulations appear to be similar to the Pennsylvania provisions in several significant respects.[3] Nevertheless, although

---

1. Transfer to the DSU is intended to be independent of disciplinary considerations. *See* 103 C.M.R. § 421.07(2) and note 3, below. Plaintiff did receive separate disciplinary sanctions for the underlying infraction about which Hall was a witness. The disciplinary tribunal that determined plaintiff's guilt and imposed the sanctions was constituted pursuant to statutes and regulations not at issue in this case. *See* note 4, below.

2. The relevant regulations considered in *Daigle* as D.O. 4450.1 remain substantively un-

changed, but are now codified at 103 C.M.R. § 421.07.

3. The Massachusetts regulations governing transfers to a DSU, 103 C.M.R. § 421.07, provide as follows:

 (1) A resident may be transferred to a departmental segregation unit after a finding by the commissioner that the record of the resident or other reliable information indicates that:

 (a) The resident poses a substantial threat to the safety of others; or

the rationale of *Hewitt* may bring into question the analysis in *Daigle,* it is not for this court to reconsider an issue already decided by the First Circuit. *Daigle* must remain the law of the circuit until the Court of Appeals or the Supreme Court indicates otherwise.[4]

■ The court finds, therefore, that plaintiff's complaint fails to establish the requisite liberty interest to invoke the procedural guarantees of the Fourteenth Amendment. Because plaintiff has not stated a federal claim, the court declines to exercise its discretionary jurisdiction over plaintiff's pendent state claim. *United Mine Workers v. Gibbs,* 1966, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218.

Defendants' motion to dismiss is allowed.

(b) The resident poses a substantial threat of damaging or destroying property; or

(c) The resident poses a substantial threat of interrupting the operation of the state correctional facility if he is confined in the general population of any state correctional facility.

(2) Notwithstanding any rule or regulation of the department to the contrary, a resident shall not be transferred to a departmental segregation unit for committing a specific punishable offense unless a disciplinary board has found him guilty of such specific offense and imposed a sanction pursuant to 103 CMR 430.00 *(Disciplinary Process Rules and Regulations),* and the commissioner has made a finding in accordance with 103 CMR 421.07(1). This shall be the case regardless of whether the specific punishable offense has been referred to outside law enforcement agencies for investigation and possible prosecution of the resident.

(3) Upon receipt of a request from a superintendent to the commissioner to transfer a resident to a departmental segregation unit, the rules set forth in 102 CMR 420.13(2) *(Guidelines for the Operation of the Reclassification Process—Intra-Facility and Interfacility),* shall be followed in determining whether to authorize the transfer of the resident to such unit; except that 103 CMR 420.13(2)(o) shall not be applicable.

Paragraph one provides three substantive standards defining prisoners who "may" be transferred to a DSU. Paragraph two establishes a mandatory prohibition against transferring an inmate simply for committing an offense. Prison officials must find that the inmate fits into one of the substantive categories in paragraph one. Paragraph three provides that an intricate procedure "shall be followed" if a superintendent seeks to transfer an inmate to a DSU. In *Hewitt,* the Supreme Court found that these regulatory characteristics—the employment of "explicitly mandatory language in connection with specific substantive predicates"—sufficiently circumscribe official discretion to compel the "conclusion that the state has created a protected liberty interest." —— U.S. at ——, 103 S.Ct. at 871.

4. The First Circuit has applied different standards defining the applicability of due process requirements in cases involving intraprison punishment of inmates than in cases involving administrative transfers of inmates. *Compare King v. Higgins,* 702 F.2d 18, 1 Cir.1983 (disciplinary hearing *must* be accompanied *by* at least minimal procedural safeguards) *with Daigle v. Hall, supra,* (statute and regulations governing intraprison administrative transfers do not establish constitutionally protected liberty interests).