**Elmo JOHNSON, Plaintiff,**

v.

**Michael FAIR, et al., Defendants.**

**Civ. A. No. 86–268–C.**

United States District Court,
D. Massachusetts.

Oct. 13, 1988.

Elmo D. Johnson, S. Walpole, Mass., pro se.

Charles Wyzanski, Associate Gen. Counsel, Dept. of Correction, Boston, Mass., for defendants Vose, Fair, Nelson, Lawton, Mendoza, Corsini, McKenney and McCra.

## MEMORANDUM

CAFFREY, Senior District Judge.

The plaintiff, Elmo Johnson, acting *pro se*, has filed a prisoner's civil rights action under 42 U.S.C. § 1983 against Michael Fair, Massachusetts Commissioner of Correction, and thirteen various and sundry officials, guards, social workers, and other employees of two of the Commonwealth's correctional institutions, MCI Norfolk and Cedar Junction. Johnson charges that he was deprived of his Fourteenth Amendment due process rights and suffered cruel and unusual punishment in violation of the Eighth Amendment, stemming from the actions of prison officials and employees after discovering a knife in his cell. Counsel for the Department of Correction has filed a motion to dismiss the plaintiff's claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Before addressing the merits of the motions before us, a brief summary of the litigant's claims is in order.

The plaintiff's pleadings tell the following story. While Johnson was imprisoned in the general population at MCI Norfolk, a medium security state prison, a guard found a sharpened piece of metal or knife during a search of Johnson's cell. Following this discovery, Johnson was transferred to Norfolk's segregation unit, charged with possession of the knife, and brought before the prison disciplinary board. The board found Johnson guilty and recommended fifteen days in isolation. A classification board then reclassified Johnson as a greater security risk. Johnson lost telephone and mail privileges while in isolation and developed "a rash" over all of his body. As a result of his reclassification, Johnson was transferred to MCI Cedar Junction, a maximum security institution.

Johnson seeks damages under 42 U.S.C. § 1983 and declaratory relief under 28 U.S.C. § 2201 and § 2202. His claims essentially fall into three categories: (1) conduct of prison officials that violated Johnson's due process rights under the Fourteenth Amendment; (2) conduct and conditions that violated his right to be free of cruel and unusual punishment under the Eighth Amendment; and (3) conduct that violated his First Amendment rights. In the first category, Johnson asserts that the following actions of the disciplinary board

violated his due process rights under the Fourteenth Amendment:

(a) failure to provide a fair and impartial hearing;

(b) failure to provide due process before placing Johnson in segregation;

(c) failure to adhere to the preponderance of the evidence standard in its deliberations; and

(d) exceeding its authority by recommending reclassification.

Johnson also argues that (e) prison officials deprived him of property without due process of law when they destroyed his television set during a search of his cell.

In the second category, Johnson argues that the following violated his Eighth Amendment rights:

(a) his transfer to MCI Cedar Junction;

(b) his confinement in the maximum security institution; and

(c) the unsanitary conditions in segregation that caused his rash.

In the third category, Johnson charges that prison officials intercepted his correspondence with his attorney and prevented him from calling his attorney while he was in segregation.

The defendants have categorically denied the plaintiff's allegations and have filed motions to dismiss the pursuant to Rule 12(b)(6). They have submitted no memoranda of law in support of their motions.

## STANDARD OF REVIEW

Our first task is to determine whether Johnson's complaint asserts any legally cognizable claims. Because defendants have moved to dismiss several claims, we read Johnson's complaint in a "favorable light," *Emery v. Merrimack Valley Wood Prod., Inc.*, 701 F.2d 985, 986 (1st Cir.1983), and take his allegations as true in order to determine whether they assert a cause of action against these defendants. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980). Other than their categorical and blanket denials, defendants have not contested any of Johnson's claims. The question facing the Court at this junc-

ture, therefore, is whether, if everything Johnson has asserted is true, he has alleged any basis for recovery against the defendants. We consider each claim in turn.

## THE DUE PROCESS CLAIMS

Under the Fourteenth Amendment, procedural due process must be afforded the person who the state seeks to deprive of life, liberty, or property. Annotation, *Prisoner's Procedural Due Process Rights, Under Federal Constitution's Fourteenth Amendment, in State Prison Disciplinary Proceedings—Supreme Court Cases*, 85 L.Ed.2d 925, 926 (1987). The law has recognized that, in some circumstances, prisoners subject to disciplinary proceedings may have a liberty interest at stake that triggers due process protections. *Id.* at 926–27. Because "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," *United States v. Chamorro*, 687 F.2d 1, 3 (1st Cir.), *cert. denied*, 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 613 (1982) (quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948)), we must examine each of Johnson's allegations separately in order to determine whether the action complained of afforded Johnson the process required under the circumstances. As we embark on this "delicate" task, we are guided by the well established principle that

> [a]ny inquiry into the constitutionality of security measures employed in a penal institution must begin with the premise that "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."

*Blackburn v. Snow*, 771 F.2d 556, 562 (1st Cir.1985) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979) (citations omitted)).

a) *The disciplinary board failed to provide a fair and impartial hearing.* Massachusetts law and regulations promul-

gated by the Department of Correction set out the procedures for disciplinary proceedings in the Commonwealth's correctional institutions. *See* M.G.L. ch. 127, § 33; Mass.Regs.Code tit. 103, §§ 430.00 *et seq.* Section 430.13 provides that "[t]he members of the disciplinary board shall be impartial." If an inmate wishes to challenge the impartiality of any member of the board, "[t]he inmate shall address his objection to the chairperson and shall state his reasons for believing the board member not to be impartial at the beginning of the hearing." *Id.* It is then the chairperson's duty to determine whether "the inmate has stated substantial reasons to support his claim"—such as whether the board member witnessed the event at issue—and remove the board member if appropriate. *Id.*

■ Johnson has asserted that the disciplinary board was not impartial, as required by law. Specifically, he charges that defendants McKenney and Awon, members of the disciplinary board, acted with "bias, malice and prejudice" at the hearing. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss at 1, ¶ 2 ("Plaintiff's Memorandum"). Johnson fails to present any facts to support his allegations and, more importantly, fails to indicate whether he exhausted the administrative remedies available to him. *See* Mass. Code Regs. tit. 103, §§ 430.18 *et seq.* ("Appeal Procedures"). The law clearly provides that an inmate may not be required to exhaust the remedies available within the prison system before seeking relief in the courts if the matter is a "grave" one. *Green v. Nelson,* 442 F.Supp. 1047, 1052 (D.Conn.1977). The District Court in *Green* defined a "grave matter" as something that "may impact directly upon the petitioner's freedom"— that is, his release from prison. *Id.* The matter considered by Johnson's disciplinary board concerned a knife found in his cell. The direct impact of the board's action was a fifteen-day sentence in isolation and transfer to a maximum security institution. Because there is no indication in the record that but for the board's membership Johnson would be free today, we cannot say that the administrative remedies available to Johnson to challenge the membership of the disciplinary board are insufficient as a matter of law. This claim should be dismissed.

■ b) *The disciplinary board failed to provide due process prior to Johnson's transfer to segregation.* Johnson claims that the prison's failure to provide him with a hearing before placing him in segregation also violated his due process rights. Massachusetts state law authorizes the superintendent of any correctional institution to transfer an inmate to a segregation unit when his "continued retention in the general population is detrimental to the program of the institution." M.G.L. ch. 127, § 39. *See also* Mass.Regs.Code tit. 103, § 421.07(1). Neither the statute nor the regulations governing transfers to a segregation unit require a hearing prior to transfer—the matter is left to the discretion of the superintendent and the commissioner. This approach has been found constitutional. *See Daigle v. Hall,* 564 F.2d 884, 885 (1st Cir.1977) ("No liberty interest springs up to protect inmates from transfer to [segregation] simply because they are originally placed in the less unpleasant surroundings of the general population."). As the United States Supreme Court has explained,

> [a]s long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed upon him and are not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.

*Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Absent a recognized liberty interest, no due process rights attach to the transfer process. Johnson has failed to demonstrate that his transfer to segregation exceeded the bounds of his original sentence. It should also be noted that although Johnson was initially placed in segregation pending his disciplinary board hearing, his transfer to isolation after the hearing apparently conforms to the procedural requirements of Sections 421.07 (segregation), 430.22 (iso-

lation), and 430.21 ("Placement on Awaiting Action Status/Transfer to Higher Custody") of Title 103 of the Code of Massachusetts Regulations. Johnson has failed to state a claim upon which relief may be granted. This claim should be dismissed pursuant to Rule 12(b)(6).

■ c) *The disciplinary board failed to adhere to the preponderance of the evidence standard.* Johnson asserts that the disciplinary board violated the preponderance of the evidence standard when it found him guilty of possessing a knife. The regulations governing the board's deliberation process provide that "[t]he proponent of the disciplinary report shall have the burden of proving the offense(s) by a preponderance of the evidence. The disciplinary board, after weighing the evidence, shall make its findings based on substantial evidence." Mass.Regs.Code tit. 103 § 430.16(1). The difference between when the "preponderance of the evidence" standard and the "substantial evidence" standard applies in the disciplinary board hearing is an important one. The preponderance of the evidence standard—defined by the regulations as that evidence supporting "[a] belief, formed after weighing the evidence, that the proponent's contention is more probably true than false"—applies to the disciplinary report that is presented to the board. *Id.* § 430.06. The substantial evidence standard—which the regulations define as "evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs"—applies to the final decision of the disciplinary board. *Id.* In giving Johnson's *pro se* pleadings the liberal construction required by law, we assume that Johnson is challenging the sufficiency of the evidence presented at the disciplinary board hearing rather than its final decision.

In his complaint, Johnson makes two assertions in support of his claim that the board violated the evidentiary standard that applies to its proceedings: (1) that the only witness who testified against Johnson was not credible because he made "inconsistent statements," and (2) that the witness's account conflicted with Johnson's own account of "his innocense [sic]."

Plaintiff's Memorandum at 1, ¶ 3. Johnson offers no examples of the unnamed witness's inconsistent statements, no excerpts from the transcript of the hearing, and no account of his innocence beyond the bare assertion that his cell was open twenty-four hours a day and that he "never had the need to possess a metal object or knife." *Id.* at ¶ 1. Johnson obviously expects the Court to infer from the pleadings that someone in the institution planted the knife in Johnson's cell. Without some sort of evidence to that effect, however, we cannot say say that the disciplinary board violated any evidentiary standard in finding Johnson guilty. Apparently a guard testified that he found a knife in Johnson's cell. Johnson also had the opportunity to testify and present evidence. The board's finding simply means that the board determined that the weight of the evidence went against Johnson. We find no reason to inquire further into the board's decision and find that this claim should be dismissed.

We also note that Johnson did apparently appeal the disciplinary board's decision pursuant to Section 430.18 and the Norfolk superintendent denied the appeal.

d) *The board exceeded its authority in reclassifying Johnson.* Johnson claims that the disciplinary board had no authority to recommend reclassification. Quite the opposite is true. Department of Correction regulations explicity authorize the disciplinary board to "make recommendations concerning the inmate's classification status." Mass.Regs.Code tit. 103, § 430.16(3). No legal basis therefore exists for this claim and it should be dismissed.

■ e) *Deprivation of property.* Johnson's final due process claim involves deprivation of property, specifically, his television set. The Supreme Court's ruling in the well known "hobby kit" case, *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), guides our consideration of this claim. *See also Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In *Parratt,* prison officials negligently lost a hobby kit an inmate

received in the mail. Observing that the inmate's claim satisfied the three prerequisites for a due process claim ("the petitioners acted under color of state law; the hobby kit falls within the definition of property; and the alleged loss, even though negligently caused, amounted to a deprivation"), the Court explained that these elements alone do not a due process claim make. *Id.*, 451 U.S. at 536–37, 101 S.Ct. at 1913. "The Fourteenth Amendment protects only against deprivation 'without due process of law,'" the Court noted, and state tort law remedies—even postdeprivation remedies—can provide the process required by the Fourteenth Amendment. *Id.* In Massachusetts, tort claims against the Commonwealth are governed by the Tort Claims Act, M.G.L. ch. 258. Johnson has not charged that the state's statutory procedures are inadequate, nor has he claimed that he was deprived of his property "as a result of some established state procedure." *Id.* at 543, 101 S.Ct. at 1917. If Johnson's television set was destroyed by prison guards, Johnson must seek his remedy in the state courts pursuant to the Massachusetts Tort Claims Act. This claim should, therefore, be dismissed.

## THE EIGHTH AMENDMENT CLAIMS

■ a) *Johnson's transfer to MCI Cedar Junction* and b) *his confinement to a maximum security institution constituted cruel and unusual punishment.* Johnson claims that his transfer from a medium security institution to a maximum security institution violated his Eighth Amendment rights. Again and again, courts have ruled that "[a] prisoner has no inherent constitutional right to be housed in any particular institution . . . or to enjoy a particular security classification." *Beard v. Livesay,* 798 F.2d 874, 876 (6th Cir.1986) (citing *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976), *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), and *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976)). In addition, the Commonwealth has not created any such interest in its law or regulations. *See Stoute v. Berman,* 555 F.Supp. 507, 510 (D.Mass.

1982). These two claims have no legal basis and should, therefore, be dismissed.

■ c) *Unsanitary conditions.* Johnson charges that vague and unspecified "unsanitary" conditions in the segregation unit caused a rash over all of his body. While the Supreme Court has observed that the definition of cruel and unusual punishment is continually evolving, *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), it is clear that to the extent that prison "conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, 101 S.Ct. at 2399. In order for a claim of unsanitary conditions to rise to the level of a constitutional violation, therefore, Johnson must assert more than simply "harsh" conditions and he must demonstrate a causal link between prison conditions and his rash. Because he has failed to do so, this claim should be dismissed.

## FIRST AMENDMENT CLAIM

■ Johnson's final claim involves interference with his mail and telephone privileges. Johnson's complaint alleges that his mail and telephone calls were "stopped," Complaint at 2, ¶ 6, while his Memorandum in Opposition alleges that Norfolk Superintendent Vose simply reviewed Johnson's mail before Johnson received it. Plaintiff's Memorandum at 2. If this alleged interference with Johnson's "legal mail" and "attorney's . . . calls" is true, prison officials violated the regulations governing prisoner mail. Massachusetts regulations consider correspondence with any "officer of a court" privileged and prohibit opening the correspondence except in the presence of the inmate, and only for the purpose of checking for contraband. Mass.Regs.Code tit. 103, §§ 481.11, 481.12. There appears to be no comparable prohibition concerning telephone calls to attorneys, although the regulations clearly state that "[t]elephone calls to courts and attorneys shall not be suspended." *Id.* § 482.07(3). If Johnson's calls to his attorney were suspended, this claim also has a legal basis.

If Johnson's claims are true, prison officials clearly violated the regulations governing prisoner mail and possibly violated Johnson's First Amendment rights. Johnson's first remedy, however, lies not with this Court but rather with the grievance procedures detailed in Sections 491 *et seq.* of Title 103. Johnson's failure to exhaust his administrative remedies—again concerning a matter that is not a "grave" one under the *Green* standard, *supra*—prevents our consideration of this claim. We are, of course, greatly concerned whenever First Amendment violations are alleged, but this concern is tempered with our recognition that "prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). So long as a meaningful grievance procedure is available to someone in Johnson's position, as is apparently the case under Title 103, we see no reason to interfere. This claim should be dismissed.

### CONCLUSION

In conclusion, we find no legal basis for Johnson's various claims. All claims should be dismissed against all defendants.

Order Accordingly.